2009 UT App 214

**AMERICAN FORK CITY, Plaintiff and Appellant,**

v.

**WILLIAMS SHAWN ASIATA, Defendant and Appellee.**

No. 20080651–CA.

Court of Appeals of Utah.

Aug. 6, 2009.

James H. Hansen and Kasey L. Wright, Pleasant Grove, for Appellant.

Brett C. Anderson, Lehi, for Appellee.

Before Judges GREENWOOD, THORNE, and McHUGH.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 American Fork City (the City) appeals from the district court's dismissal of a class B misdemeanor assault charge filed against Williams Shawn Asiata. We affirm.

## BACKGROUND

¶ 2 On November 2, 2007, Asiata allegedly assaulted a high school football player during a game between American Fork High School and Hunter High School. In the closing minutes of the game, a fight between players began on the field. Asiata, who was a spectator, went on the field and allegedly kicked an American Fork High School player twice in the head.

¶ 3 During the ensuing investigation, the police came into possession of several video recordings of the incident. Those recordings were obtained either through police investigation or by way of a request broadcast by local media. In that request, private citizens in possession of footage of the incident were asked to voluntarily produce such recordings to the police. The City alleges that the police collected the recordings, created copies, and returned the originals to their owners, with the exception of one recording identified as the Bangerter video. In the case of the Bangerter video, the police retained the original recording.

¶ 4 Beginning in December 2007, Asiata made his first request for general discovery, including any video footage of the fight. The City declined to act on Asiata's first general discovery request, directing Asiata instead to obtain any evidence from the appropriate agency. On February 8, 2008, Asiata made a second general discovery request that went unanswered by the City. On March 11, 2008, Asiata filed a rule 16(a)(5) motion with the district court, specifically requesting any video evidence obtained by the City. When the City failed to respond by early April, Asiata requested that the district court rule on the 16(a)(5) motion. On April 29, 2008, the district court ordered the City to produce copies of the requested materials. The City complied with the district court's order on May 7, 2008, by providing Asiata with copies of the requested video recordings.

¶ 5 Upon viewing the duplicate recordings, Asiata became concerned that the recordings appeared to be incomplete and perhaps had portions edited out. On May 14, 2008, Asiata asked to view the original recordings and also requested the names and addresses of the video recordings' original owners.[1] The

---

1. Our references to the original recordings mean the recordings as they were originally obtained

City arranged for Asiata to view the original recordings at the police station on May 23, 2008. At that meeting, the City revealed that it only had possession of one original recording, the Bangerter video, and could not produce the original recordings for the other videos. The City also claimed they did not possess the names and addresses of the owners of the other videos.

¶ 6 After learning that most of the original recordings were unavailable, Asiata filed a motion with the district court to suppress all of the video recordings. The City responded that it was not obligated to produce the original recordings because they contained no exculpatory evidence. During a pre-trial conference held on May 27, 2008, the district court indicated that Asiata should be provided the opportunity to view the original recordings or, in the alternative, to interview the recordings' owners, to ensure that the videos were complete and had not been altered. To facilitate this, the district court ordered the City to produce the original recordings, as well as the names and contact information of the owners, within thirty days. The district court expressly warned the City that noncompliance with the order would result in a dismissal of the City's case against Asiata.

¶ 7 On June 25, 2008, the day before expiration of the court-ordered thirty-day deadline and four business days prior to trial, the City provided Asiata with a partial list of the original owners' contact information, but did not provide any of the original recordings. The City explained that the officer who could provide the additional contact information was out of town, and that it could provide the information upon his return if Asiata wished. The City did not, however, otherwise explain why it failed to comply fully with the district court's order.

¶ 8 During a second pre-trial conference on July 2, 2008, Asiata informed the district court of the City's non-compliance with the order to produce. Upon Asiata's request and consistent with its prior order, the district court then dismissed the case with prejudice.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 The City asserts that the district court erred in requiring the City to produce the original recordings and the ownership information for those recordings. The City argues that the video recordings did not contain exculpatory evidence and that Utah law does not require them to provide the original recordings to Asiata. The City further argues that the district court should not have ordered production of the originals because they were no longer in the City's possession and appear to have been lost or destroyed. "Because trial courts have broad discretion in matters of discovery, this issue is reviewed for abuse of discretion." *Green v. Louder*, 2001 UT 62, ¶ 37, 29 P.3d 638.

■ ¶ 10 The City also argues that the district court abused its discretion in dismissing the case when the City failed to comply with the court's order. In particular, the City asserts, for the first time on appeal, that the district court failed to comply with the requirements of rule 25 of the Utah Rules of Criminal Procedure, *see* Utah R.Crim. P. 25. We generally decline to address issues that are not properly preserved in the district court or are raised for the first time on appeal. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

## ANALYSIS

### I. The District Court's Production Order

■ ¶ 11 We consider first the City's various arguments that the district court erred in ordering the City to produce the original recordings and owner contact information. We review the City's arguments against the backdrop that the district court "is allowed broad discretion in granting or refusing discovery and inspection." *State v. Knill*, 656 P.2d 1026, 1027 (Utah 1982) (citing the statutory predecessor to rule 16 of the Utah Rules of Criminal Procedure).

¶ 12 The City first argues that it was not obligated to produce original recordings because the duplicates produced to Asiata were sufficient and the originals were unobtaina-

---

by the police. We note the possibility that the recordings provided to the police by members of

the public were themselves incomplete or edited copies of the truly original recordings.

ble, lost, or destroyed. Although this argument does not, strictly speaking, present a question of the admissibility of the duplicate video evidence, the City argues the applicability of the rules of evidence pertaining to photographic evidence such as video recordings. *See* Utah R. Evid. 1003–1004. Those rules govern the interplay between duplicate and original recordings in the admissibility context, and we take some guidance from those rules in the present case.

¶ 13 Under rule 1003 of the Utah Rules of Evidence, duplicate video recordings are generally admissible in evidence, except in cases where there is a "genuine question" about the authenticity of the original. *See id.* R. 1003. Rule 1004 of the Utah Rules of Evidence further clarifies:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
> (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
> (2) Original not obtainable. No original can be obtained by any available judicial process or procedure....

*Id.* R. 1004.

[3] ¶ 14 The City's appellate brief relies on rules 1003 and 1004 and argues that, while Asiata questioned the authenticity of the duplicates, he never alleged "bad faith" on the part of the prosecutor. *See id.* R. 1004(1). The City argues that this lack of bad faith renders the duplicates admissible, and implies that the duplicates' admissibility precludes the district court from ordering the City to produce the originals. We disagree with the City's assumption that the admissibility of either the duplicates or the originals limits the district court's broad discretion to order discovery of relevant materials. *Cf.* Utah R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding *any* matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (emphasis added)).

¶ 15 However, to the extent that rules 1003 and 1004 have some bearing on determining the boundaries of the district court's discretion in this matter, it is clear from the record that the district court was concerned with both possible bad faith on the part of the police and with the ultimate accuracy of the available video evidence. At the suppression hearing, the district court stated:

> I'm not going to suppress it now. But I'll give you, you know, seems to me that a, what concerns me is public safety getting rid of evidence. That's what it amounts to. It's not their decision. Once they have it in their possession and they see everything and they should have consulted you before they got rid of the originals. And they may have been useless to the defendant. But until we know what was in the originals we cannot presume it wasn't doctored. We don't make presumptions here. That's, that's an issue that's tied into this case that, that can shock the conscience. And I'm sure you would have, you and your office would have told them well wait, wait, wait, you keep everything, don't return it.
>
> I'm not going to suppress it. I'll give them 30 days to produce it. If not I'll dismiss this.

In light of the district court's express concerns, we reject the City's argument that rules 1003 or 1004 place any limitations on the district court's discretion to issue its production order under the circumstances of this case.

¶ 16 The City next argues that it did not possess the originals or the contact information for the original owners and, therefore, could not provide that material to Asiata. The City asserts that the Utah Supreme Court held in *State v. Knill*, 656 P.2d 1026 (Utah 1982), that prosecutors need not produce evidence that is no longer in their possession. In *Knill*, police returned a stolen car to its out-of-state owner without allowing Knill the opportunity to inspect the vehicle. *See id.* at 1027. On appeal, the supreme court held that "[t]here was no abuse of discretion in denying the defense motion to produce the automobile when it was no long-

er in the possession of the State and when there was no showing of its evidentiary significance to the defense." *Id.* at 1027–28.

¶ 17 *Knill* is of limited value to our analysis because it merely affirmed a district court's discretionary decision *not* to require production of evidence, rather than reversing a decision to require production. *See id.* at 1029. However, to the extent that *Knill* provides some guidance, it is distinguishable from the present case. Here, the district court found that Asiata *had* made a showing of the original recordings' evidentiary significance, stating "until we know what was in the originals we cannot presume it wasn't doctored."

¶ 18 Further, *Knill* did not present the same concerns expressed by the district court here relating to "public safety getting rid of evidence." Although evidence was released in *Knill*, the evidence was a stolen vehicle that was rightfully claimed by its owner, and the alleged evidentiary value of the vehicle was tangential to the prosecution's case. In this case, there is no indication that the owners of the recordings were demanding their return, and the recordings are directly relevant to Asiata's guilt or innocence. In sum, we see nothing in *Knill* that limits the district court's discretion to order production of the original recordings in this case.

¶ 19 Finally, the City argues that the video recordings do not contain exculpatory evidence and the City is, therefore, not required to provide the originals to Asiata. Under the Utah Rules of Criminal Procedure, prosecutors have certain obligatory disclosures they must make to the defense, *see* Utah R.Crim. P. 16(a), and these obligatory disclosures include exculpatory evidence, *see id.* R. 16(a)(4). Thus, the City is correct that, if the recordings are not exculpatory and do not otherwise fall within rule 16(a), then the City is not required to produce them as a mandatory disclosure under the rule.

¶ 20 However, rule 16(a)(5) requires the City to produce any evidence ordered to be produced by the district court: "[T]he prosecutor shall disclose to the defense ... any other item of evidence which the court determines on good cause shown should be

made available to the defendant in order for the defendant to adequately prepare his defense." *Id.* R. 16(a)(5); *see also State v. Kallin,* 877 P.2d 138, 143 (Utah 1994) ("[W]hen required by court order, the State must disclose evidence pursuant to Rule 16 of the Utah Rules of Criminal Procedure."). Here, the district court ordered production of the original recordings and explained its good cause for doing so. The City was, therefore, obligated to comply with the district court's order regardless of whether the evidence was exculpatory.

¶ 21 We conclude that the district court did not exceed the boundaries of its discretion in ordering the City to produce the original recordings and contact information. Accordingly, we affirm the district court's production order.

## II. The District Court's Dismissal Order

¶ 22 We next consider the City's argument that the district court abused its discretion by dismissing the case when the City failed to comply with the production order. The City primarily argues that the district court failed to comply with the requirements found in rule 25 of the Utah Rules of Criminal Procedure. Rule 25(a) states: "In its discretion, for substantial cause and in furtherance of justice, the court may, either on its own initiative or upon application of either party, order an information or indictment dismissed." Utah R.Crim. P. 25(a). Rule 25(c) further provides that "[t]he reasons for any such dismissal shall be set forth in an order and entered in the minutes." *Id.* R. 25(c). The City asserts that the district court failed to set forth the reasons for the dismissal in the order and also failed to enter the same in the minutes. We are unable to consider this argument because the City failed to preserve the issue in the district court.

¶ 23 "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (internal quotation marks omitted).

To be preserved for appeal, "(1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority." *Id.* (alterations in original) (internal quotation marks omitted). The City never identified any alleged shortcomings in the district court's order or minute entry to the district court, nor did it make any other arguments to the district court that dismissal was improper under the circumstances.[2] We therefore conclude that the City did not properly preserve its rule 25 argument, or any other potential legal objection to the dismissal order. Accordingly, we decline to disturb the district court's order dismissing the City's case against Asiata.

## CONCLUSION

¶ 24 The district court acted within its discretion in ordering the City to produce the original video recordings and contact information at issue in this case. Further, the City did not raise its arguments under rule 25 challenging the dismissal of the case before the district court, and thus any error that may have occurred under that rule has not been preserved as an issue for appeal. Accordingly, we affirm the district court's dismissal of the City's case against Asiata.

¶ 25 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, CAROLYN B. McHUGH, Judge.

---

**2.** The City did file an objection to the district court's Findings of Fact and Order of Dismissal, but the objection only challenged certain factual findings and did not present any legal argument against dismissal of the City's case. The challenged factual findings are not at issue on appeal.